# MATTER OF SANTOS

## In Deportation Proceedings

## A-24879910

## Decided by Board June 26, 1984

(1) An alien must demonstrate that he has been prejudiced by a violation of a procedural rule or regulation before his deportation proceeding will be invalidated.

(2) In cases arising outside of the United States Courts of Appeals for the Seventh Circuit and the District of Columbia Circuit, a violation of the right to counsel in a deportation proceeding may be disregarded as harmless error so long as the violation is not fundamentally unfair and does not demonstrably prejudice the alien.

(3) The scheduling of a deportation hearing on less than 7 days' notice does not violate either the notice requirement of 8 C.F.R. § 242.1(b) (1984) or the constitutional guarantee of due process when the district director finds the public interest requires shorter notice, the notice is reasonable under the circumstances of the case, and the alien is not prejudiced.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Harold Green, Esquire
6917 Old Seward Highway
Anchorage, Alaska 99502

ON BEHALF OF SERVICE:
David B. Hopkins
General Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The respondent has appealed from the December 30, 1982, summary decision of an immigration judge finding him deportable as an overstay pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982). The appeal will be dismissed.

The respondent is a 48-year-old male native and citizen of the Philippines. He entered the United States at San Francisco, California, on June 2, 1982, as a nonimmigrant visitor for pleasure who was authorized to remain in this country until August 30, 1982. He failed to depart by that date. On November 16, 1982, prior to the institution of deportation proceedings, the Immigration and Natu-

ralization Service granted the respondent the privilege of departing voluntarily from the United States before December 15, 1982. He again failed to depart within the time allotted. On December 27, 1982, the Service arrested the respondent in Anchorage, Alaska, and commenced deportation proceedings against him by issuing an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) charging him with deportability pursuant to section 241(a)(2) of the Act for remaining in the United States longer than permitted.

A deportation hearing was convened before the immigration judge 1 day later, on December 28, 1982. At that hearing the respondent requested an opportunity to secure counsel and was granted a continuance of 1 day to do so. At the reconvened hearing on December 29, 1982, the respondent, who had been unable to retain an attorney, waived his right to counsel and, testifying in response to questions put to him by the immigration judge, admitted the factual allegations in the Order to Show Cause. In a summary decision the immigration judge found the respondent deportable as charged on the basis of his admissions. Upon ascertaining that the respondent wished to depart voluntarily instead of being deported, the immigration judge granted the respondent voluntary departure until December 30, 1982, or any extension beyond that date that may be granted by the district director. The respondent waived his right to appeal the immigration judge's decision.

On January 3, 1983, the respondent, with the assistance of counsel, filed this appeal. He contests the legality of his waivers of counsel and of appeal, challenges the sufficiency of the evidence of deportability, and contends that the Service and the immigration judge violated not only various regulations, but the fifth amendment's guarantee of due process. We shall assume jurisdiction over the case by certification as provided in 8 C.F.R. § 3.1(c) (1984), thus mooting the issue of whether the respondent effectively waived his right to appeal.

As a preliminary matter, we will address the respondent's argument that the evidence in the case is insufficient to support the finding of deportability. When an alien is charged with being deportable as an overstay pursuant to section 241(a)(2) of the Act, there must be "clear, unequivocal, and convincing evidence," *Woodby v. INS*, 385 U.S. 276, 286 (1966), that the alien was admitted as a nonimmigrant for a temporary period, that the period elapsed, and that he did not depart. *Ho Chong Tsao v. INS*, 538 F.2d 667, 668 (5th Cir. 1976), *cert. denied*, 430 U.S. 906 (1977); *Milande v. INS*, 484 F.2d 774, 776 (7th Cir. 1973); *see also Torabpour v. INS*, 694 F.2d 1119, 1122 (8th Cir. 1982); *Cabuco-Flores v. INS*, 477

F.2d 108, 110 (9th Cir.), *cert. denied,* 414 U.S. 841 (1973). The respondent freely admitted, under oath, that he entered the United States as a nonimmigrant, that he was authorized to remain until August 30, 1982, that he received an extension until December 15, 1982, and that he did not depart by that date. These admissions are clear, unequivocal, and convincing and prove each of the elements of the charge of deportability. *See, e.g., Milande* v. *INS, supra.* Thus, we find them wholly sufficient to support the order of deportation.

The respondent contends that we should reverse the order of deportation because his right to counsel was violated at his deportation hearing, thereby denying him due process. Specifically, the respondent argues that he was not given an adequate opportunity to obtain counsel and that he did not effectively waive his right to counsel once the hearing commenced. We do not believe the respondent was denied the privilege of counsel at his hearing. The immigration judge granted the respondent's request for a continuance so that he could have an opportunity to obtain counsel and, at the reconvened hearing, the respondent did not request more time to seek counsel or indicate he still wished to secure representation. *See Millan-Garcia* v. *INS,* 343 F.2d 825, 829 (9th Cir.), *vacated and remanded on other grounds,* 382 U.S. 69 (1965). In addition, the respondent's waiver of counsel appears to have been voluntary, knowing, and intelligent. There is no indication, whatsoever, that he waived counsel because of undue Government influence, nor do his statements at the time of the waiver reveal any confusion about the nature of the proceedings, his privilege of being represented, or his rights to present evidence, cross-examine witnesses, and object to the Government's evidence. *See Burquez* v. *INS,* 513 F.2d 751, 755 (10th Cir. 1975); *Matter of Gutierrez,* 16 I&N Dec. 226 (BIA 1977). Moreover, the immigration judge sufficiently informed the respondent of his privilege of counsel. *See United States* v. *Barraza-Leon,* 575 F.2d 218, 222 (9th Cir. 1978); *Matter of Gutierrez, supra.*

Nevertheless, even if the respondent was not given sufficient time to obtain counsel or did not effectively waive counsel, it does not automatically follow that he has been denied constitutional due process. We have held an alien must demonstrate that he has been prejudiced by a violation of a procedural rule or regulation before his deportation proceeding will be invalidated. *Matter of Garcia-Flores,* 17 I&N Dec. 325, 329 (BIA 1980). This is consistent with the rule that an alien must have been prejudiced by a procedural defect in his deportation proceeding before he will be found to have suffered a denial of due process. *See Ka Fung Chan* v. *INS,* 634

F.2d 248, 258 (5th Cir. 1981); *United States* v. *Calles-Pineda,* 627 F.2d 976, 977–78 (9th Cir. 1980); *Tejeda-Mata* v. *INS,* 626 F.2d 721, 727 (9th Cir. 1980), *cert. denied,* 456 U.S. 994 (1982); *see also United States* v. *Vega-Mejia,* 611 F.2d 751, 752 (9th Cir. 1979); *Garcia-Jaramillo* v. *INS,* 604 F.2d 1236, 1238–39 (9th Cir. 1979), *cert. denied,* 449 U.S. 828 (1980); *Bowe* v. *INS,* 597 F.2d 1158 (9th Cir. 1979); *Nicholas* v. *INS,* 590 F.2d 802, 808–10 (9th Cir. 1979); *United States* v. *Barraza-Leon, supra,* at 221; *Orozco-Rangel* v. *INS,* 528 F.2d 224 (9th Cir. 1976); *Chung Young Chew* v. *Boyd,* 309 F.2d 857, 864–65 (9th Cir. 1962). We consider this rule to apply with equal force to the contention that an alien has been denied due process in his deportation proceeding because of conduct that amounts to a violation of his right to counsel.

The "right" to counsel does not arise by operation of the sixth amendment, for deportation proceedings are not criminal prosecutions. *Ramirez* v. *INS,* 550 F.2d 560, 563 (9th Cir. 1977); *Martin-Mendoza* v. *INS,* 499 F.2d 918, 922 (9th Cir. 1974); *Murgia-Melendrez* v. *INS,* 407 F.2d 207, 209 (9th Cir. 1969). Rather, this "right" is the opportunity, created by the Act and the regulations, of being represented by qualified counsel of choice, at no expense to the Government. *See, e.g., Ramirez* v. *INS, supra; see also* sections 242(b), 292 of the Act, 8 U.S.C. §§ 1252(b), 1362 (1982); 8 C.F.R. § 242.10 (1984). An erroneous violation of this statutory privilege is not, as a matter of law, so egregious or inherently unfair that it amounts to a per se denial of due process. For example, the ineffective assistance of counsel in a deportation proceeding does not amount to a denial of due process unless it has been unfair or has prevented an alien from reasonably presenting his case. *Thorsteinsson* v. *INS,* 724 F.2d 1365, 1367 (9th Cir.), *cert. denied,* 467 U.S. 1205 (1984); *Paul* v. *INS,* 521 F.2d 194, 199 (5th Cir. 1975). Similarly, the absence of counsel at a deportation hearing does not constitute a denial of due process without some showing of prejudice to the alien. *Ramirez* v. *INS, supra,* at 562, 565; *Aguilera-Enriquez* v. *INS,* 516 F.2d 565, 569 (6th Cir. 1975); *Burquez* v. *INS, supra,* at 755; *Martin-Mendoza* v. *INS, supra,* at 922; *Villanueva-Jurado* v. *INS,* 482 F.2d 886, 888 (5th Cir. 1973); *Henriques* v. *INS,* 465 F.2d 119, 120–21 (2d Cir. 1972), *cert. denied,* 410 U.S. 968 (1973); *Sumio Madokoro* v. *Del Guercio,* 160 F.2d 164, 167 (9th Cir.), *cert. denied,* 332 U.S. 764 (1947); *Matter of Escobar,* 18 I&N Dec. 412 (BIA 1983). The Supreme Court has recently acknowledged that even violations of the right to counsel in criminal proceedings may be disregarded as harmless error in appropriate cases. *United States* v. *Morrison,* 449 U.S. 361, 365 (1981); *see also Moore* v. *Illinois,* 434 U.S. 220, 232 (1977). If this is the rule in criminal proceedings where the right to

counsel is grounded in the specific guarantee of the sixth amendment, it is, a fortiori, the rule in deportation proceedings where the statutory privilege of counsel is grounded in the due process concept of fairness. That concept necessarily includes consideration of the harm or prejudice caused by erroneous conduct.

The respondent argues, however, that the privilege of counsel is so fundamental that its violation can never be considered harmless error. This position has been accepted by the United States Courts of Appeals for the Seventh Circuit and the District of Columbia ("D.C.") Circuit, both of which have held that a violation of the privilege of counsel in deportation proceedings is inherently prejudicial and is not subject to the harmless error doctrine. *Castaneda-Delgado* v. *INS*, 525 F.2d 1295 (7th Cir. 1975); *Yiu Fong Cheung* v. *INS*, 418 F.2d 460 (D.C. Cir. 1969). These courts, which relied exclusively on decisions in criminal cases to support their position, did not address the distinction between deportation proceedings and criminal trials. *See, e.g., Woodby* v. *INS, supra,* at 285-86; *Harisiades* v. *Shaughnessy,* 342 U.S. 580, 594 (1952). Moreover, these courts based their decisions upon the premise, rejected in *United States* v. *Morrison, supra,* and *Moore* v. *Illinois, supra,* that violations of the right to counsel may never be considered harmless, even where no prejudice ensues. For these reasons, we decline to follow the position of the Seventh and the D.C. Circuits outside of those circuits. Since the respondent's case arises in the Ninth Circuit, we hold that a deprivation of counsel does not amount to a denial of due process so long as it was harmless error, *i.e.,* so long as it was not unfair or did not demonstrably prejudice the respondent.[1]

At the deportation hearing the respondent readily admitted the facts which make him deportable as charged. He has not denied those facts nor has he challenged the legality of his admissions.[2] In

---

[1] Our holding is distinguishable from the decision in *Castro-Nuno* v. *INS,* 577 F.2d 577 (9th Cir. 1978), in which the Ninth Circuit reversed an order of deportation when an immigration judge failed to continue an alien's deportation hearing until such time as counsel retained by the alien could be present. In that case, the Ninth Circuit held that the immigration judge had denied the alien his statutory privilege of counsel and thereby had committed a reversible abuse of discretion. *Id.* at 579. There was no contention in that case, however, that the violation of the privilege of counsel was harmless error. Thus, the Ninth Circuit did not address the issue.

[2] This is not a case in which counsel validly could have advised the respondent that he had a fifth amendment privilege to remain silent in response to the questions about his alienage and his failure to depart within the authorized time. The fifth amendment privilege against compelled self-incrimination exists only when a person is asked to testify to incriminatory facts, *i.e.,* facts which could make him

*Continued*

the appellate stage of these proceedings the respondent has received the assistance of counsel in presenting his procedural objections to the order of deportation. Counsel has not advanced any arguments which refute the finding of deportability nor has he shown that the respondent was eligible for any form of discretionary relief from deportation other than that which he received, voluntary departure. Thus, this is a case in which the operative facts are undisputed, deportability is clear, and the respondent has been given a fair opportunity to challenge the deportation order on appeal and has failed to show how the presence of counsel would have changed the outcome. Under these circumstances, any erroneous violation of the privilege of counsel that may have occurred was neither unfair nor prejudicial to the respondent and therefore did not amount to a denial of due process requiring a new hearing. *See Henriques* v. *INS, supra,* at 121.

The respondent has also raised a number of other procedural objections to his deportation hearing. Several of these objections are frivolous. The objection that the respondent was neither provided with nor given an opportunity to secure an interpreter ignores the fact that there was no apparent need for an interpreter because the respondent did not request one and appeared to understand and speak English well. The objection that the respondent was not advised that his statements might be used against him, in violation of 8 C.F.R. §§ 242.1(c) and 242.2(a) (1982), is unsupported by the record. The regulations cited pertain to advice an alien is to receive before a deportation hearing commences, either upon service of an Order to Show Cause or upon arrest, and the record contains no information whatsoever about the Service's conduct at this point in the proceedings. Moreover, once the respondent was placed under oath at his deportation hearing, he had no right to remain silent to nonincriminating questions, *see supra* note 2, and he was under an obligation to answer any questions truthfully or suffer the adverse inferences that could be drawn from his silence. *United States ex rel. Vajtauer* v. *Commissioner,* 273 U.S. 103, 110 (1927); *United States ex rel. Bilokumsky* v. *Tod,* 263 U.S. 149, 154 (1923); *Chavez-Raya* v. *INS,* 519 F.2d 397, 401 (7th Cir. 1975). The objection that the Order to Show Cause provided insufficient notice of the charges against the respondent and required an explanation is wholly without merit. The Order to Show Cause fully complied with the notice

subject to criminal prosecution. *See Minnesota* v. *Murphy,* 465 U.S. 420, 435 n.7 (1984); *Wall* v. *INS,* 722 F.2d 1442 (9th Cir. 1984); *Matter of Carrillo,* 17 I&N Dec. 30 (BIA 1979). No crime is implicated when an alien overstays his allotted time. Thus, the facts which the respondent was asked to, and did, admit were nonincriminatory facts and he had no valid basis for asserting a fifth amendment privilege.

110

requirements of the regulations: it contained a recitation of the legal authority under which the deportation proceedings would be conducted, a statement of the facts which made the respondent's conduct unlawful, and a designation of the charges against the respondent and the statutory provisions he violated. 8 C.F.R. § 242.1(b) (1982). The respondent made no request to be provided with an explanation of the Order to Show Cause, nor did he express any uncertainty when he admitted each of the allegations.

The respondent has also argued that the Service's regulations were violated, thereby denying him due process, because he was not advised of the availability of a free legal services program. The regulations require an immigration judge at the opening of a deportation hearing to advise an alien of the availability of such programs and to ascertain whether the alien has received a list of them. 8 C.F.R. § 242.16(a) (1982). It appears from the record that the immigration judge did not advise the respondent of the availability of such programs at the opening of his hearing. Nonetheless, the immigration judge was able to ascertain that the respondent had already been informed of the availability of a free legal services program: the immigration judge had before him, as an exhibit, the Order to Show Cause which had been served upon the respondent and to which was attached a Written Notice of Appeal Rights (Form I-618) informing the respondent of the existence and address of Legal Aid. Under these circumstances, it is clear that the respondent was given notice, before his deportation hearing, of the availability of a free legal services program and thus was not prejudiced by the immigration judge's failure to advise him of that program at the start of the hearing. Since the immigration judge's failure to comply fully with 8 C.F.R. § 242.16(a) (1982) was a procedural defect which did not prejudice the respondent, it did not amount to a violation of due process. See *Tejeda-Mata* v. *INS*, *supra*, at 727; *Ka Fung Chan* v. *INS*, *supra*, at 258.

The respondent's final procedural objection is that he was not given sufficient notice of his deportation hearing, in violation of 8 C.F.R. § 242.1(b) (1982) and the requirements of due process. The regulation cited by the respondent provides that an alien shall be notified of the time and place of his deportation hearing not less than 7 days before the hearing date, unless the Service believes that the public interest, safety, or security requires shorter notice, or unless the alien requests shorter notice. 8 C.F.R. § 242.1(b) (1982). The Service complied fully with this regulation in the respondent's case because the district director found the public interest required the respondent to undergo an immediate hearing and issued a written notification to that effect.

Moreover, the district director's decision to issue the notice appears to have been reasonable. Both of the parties' briefs on appeal agree that the respondent's deportation hearing was held without the standard 7 days' notice because Alaska did not have a full-time immigration judge at the time of the respondent's arrest; rather, an immigration judge traveled from Seattle, Washington, to spend a few days in Anchorage, Alaska, on a quarterly visit to the city. The Service has argued that the district director believed it to be in the public interest to schedule an immediate hearing because the respondent was unable to raise money for bond and the Service was faced with the dilemma of holding a hearing on short notice, or keeping the respondent in detention, at public expense, until the immigration judge returned to Alaska. It was not unreasonable for the district director to conclude that it would be in the public interest to avoid the costs of detaining the respondent at public expense until the immigration judge returned to Anchorage, for this is a time in which our nation is faced not only with immigration costs that are rising at an alarming rate but also with a staggering federal budget deficit. *See generally, Lopez-Mendoza v. INS*, 705 F.2d 1059, 1091–92 (9th Cir. 1983) (Alarcon, J., Wright, J., Wallace, J., and Poole, J., dissenting). Nor was it unreasonable for the respondent to be required to face a deportation hearing on short notice: the charge that he was deportable as an overstay was capable of resolution by the mere fact of his presence in this country beyond his authorized time and was not subject to any defenses which would require expertise in immigration law. In addition, the respondent had the opportunity, which he exercised, of seeking a continuance of his hearing. *See* 8 C.F.R. § 242.13 (1982).

The respondent has received all of the basic prerequisites of a fundamentally fair hearing: he was notified of the charge against him 2 days before he chose to proceed with his hearing; he was given the opportunities to retain counsel, to be heard, and to produce evidence and witnesses to refute the evidence against him; and his case was decided by an unbiased immigration judge and by the Board based upon substantial evidence of record. *See Whitfield v. Hanges*, 222 F. 745 (8th Cir. 1915). Thus, inasmuch as none of the alleged procedural defects, individually or in the aggregate, affected the outcome of the respondent's case or the validity of the deportation order, we cannot agree that he has been denied constitutional due process. Accordingly, the appeal will be dismissed.

We note that the respondent has contested the immigration judge's grant of voluntary departure. We need not decide whether it was reasonable for the immigration judge to grant the respondent 1 day to arrange his departure inasmuch as he has now been

112

able to extend his time in this country by virtue of this appeal. *See* 8 C.F.R. § 3.6(a) (1984). Generally, when we dismiss an alien's appeal, we reinstate the immigration judge's grant of voluntary departure if that grant is less than 30 days. *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977). In the respondent's case, however, we will modify the immigration judge's order and grant the respondent 15 days for voluntary departure in order to give him more time to prepare for departure.[8]

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** In lieu of deportation, the respondent is permitted to depart voluntarily from the country without expense to the Government within 15 days from the date of this order, or any extension beyond that date as may be granted by the district director and under such conditions as he may direct. In the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.

---

[8] The respondent has submitted various letters and documents to us on appeal which attest to the validity of a marriage between him and a woman identified solely as Shirley Santos. It appears from the notice attached to these exhibits that the respondent may be seeking to challenge the district director's failure to act upon a visa petition which he alleges was filed on January 28, 1983. Initial action on such a visa petition is a matter solely within the jurisdiction of the Service, not the Board. *See* 8 C.F.R. § 204.1(a) (1984). Since we have no explanation or motion before us regarding these documents and no original jurisdiction to decide matters pertaining to a visa petition, we will return these documents to the attorney for the respondent.

113